UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| COMMUNITY BANK, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:08-cv-01443-WTL-JMS |
| | ) | |
| PROGRESSIVE CASUALTY INSURANCE | ) | |
| COMPANY, | ) | |
| *Defendant.* | ) | |

## ORDER

Presently before the Court is Plaintiff Community Bank's Motion for Protective Order (the "Motion"). [Dkt. 62]

### BACKGROUND

Last May in this "directors and officers" insurance coverage case, Defendant Progressive Casualty Insurance Company ("Progressive") served a non-party subpoena on the law firm Cook & Cook, which represented Community Bank in the underlying litigation. [Dkt. 63-1.] When Cook & Cook timely served its response, it generally objected to producing any work-product or attorney-client privileged documents and advised Progressive that it would make the non-privileged responsive documents available for inspection and copying. [Dkt. 63-2.] Cook & Cook didn't provide any privilege log, even though Progressive explicitly asked for one before it showed up to inspect the documents in June 2009. [Dkt. 65-1 at 4 (requesting, in a letter not copied to Community Bank, "as is required by FRCP 45(d)(2)(A), please provide to me a privilege log specifically identifying each document which you claim is subject to a claim of attorney-client privilege or work-product protection." (citation omitted)).] Community Bank did not prepare a privilege log either. In fact, Community Bank acknowledges it didn't review any of the documents that Cook & Cook was making available to Progressive beforehand. Indeed,

Community Bank had no idea which documents Cook & Cook made available for inspection until February 2010, when, at the Court's direction, it reviewed them in connection with the present Motion.  [*See* dkt. 61 at 1 ("Plaintiff shall meet and confer with Defendant about the most practicable way to review the documents that Defendant copied [from Cook & Cook]. Plaintiff shall also make any necessary arrangements with Mr. Cook to inspect the documents that were…not copied.").]

As it turns out, Progressive had the opportunity to inspect and copy all of Cook & Cook's responsive documents, privileged or not.  Progressive's local counsel, who went over to Cook & Cook's office to inspect the documents, says that Mr. Stephen Cook, a partner at the firm, "met [her], showed [her] to his conference room and something to the effect of 'I haven't prepared a privilege log—here's my whole file.'"  [Dkt. 65-1 ¶7.]  Mr. Cook recalls the incident differently. He says that he had segregated out the privileged material on one wall of the conference room, but because he hadn't had time to move the boxes, told Progressive's local counsel that she could look at everything except the boxes on that one particular wall.  [Dkt. 66-1 ¶¶6-8.]  In any event, everyone agrees that Progressive's local counsel did, in fact, look through everything.  And, Mr. Cook's secretary didn't notice that Progressive's counsel had flagged items from the "privileged" boxes when she met with a third-party copy service to arrange for copying the flagged items. [*See id.* at ¶11.]

Because Mr. Cook didn't himself review the items that Progressive had selected for copying, nor did he pay to receive copies of what Progressive copied, [*see id.* at ¶¶12-14], he says that didn't know that Progressive had reviewed his entire file.  At his deposition, in January 2010, he, and Community Bank, found out; Progressive marked as Exhibits 13 and 14 two items that Mr. Cook says that he intended to withhold on privilege grounds.

Community Bank objected during the deposition, contending that the documents had obviously been inadvertently produced, and asked that Progressive's counsel "return or destroy and certify to us that he has destroyed [Exhibits 13 and 14 and ] any similar documents that were produced by Mr. Cook." [Dkt. 63-3 at 6.] In response, Progressive contended that Mr. Cook intentionally produced his entire file and that, in any event, Community Bank had waived whatever privilege or protection might otherwise attach to his file by asserting its insurance claim. [*Id.*]

Shortly after the deposition, Community Bank sent an email addressing Progressive's argument that the insurance claim itself constituted a waiver and advised that Mr. Cook would shortly write a letter rebutting the charge of intentional waiver. [Dkt. 63-4 at 1.] Mr. Cook would ultimately send that letter on February 18. [Dkt. 63-5.][1]

On January 31, 2010—despite Community Bank's objections during Mr. Cook's deposition and its subsequent letter—Progressive filed a motion for summary judgment that relied, in part, upon Exhibits 13 and 14 from Mr. Cook's deposition. [Dkt. 60-11.]

Progressive's decision to fight about Community Bank's claims of inadvertent waiver stands in stark opposition to what Community Bank previously did when the shoe was on the other foot. In April 2009, Progressive advised by email that it had accidently produced unredacted copies of seven pages of documents and, "[i]n accordance with Fed. R. Civ. Pro. 26(b)(5)(B),… request[ed] that [Community Bank] either return or destroy [those unredacted] documents." [Dkt. 63-7 at 3.] Community Bank immediately did so. [*Id.*] But not only that, Community Bank suggested that Progressive may have also inadvertently produced two other

---

[1] In the letter, Mr. Cook references Exhibits 9 and 10, rather than Exhibits 13 and 14. [*Id.* at 3 ("[W]e ask that you return Exhibit 9 and 10 to us, together with any additional documents inadvertently produced by us.").] The parties don't explain the disconnect between the two exhibit references.

documents.   [*Id.* at 2.]   Progressive acknowledged that it had, so Community Bank also

destroyed those at Progressive's request.   [*Id.*]   Then, a few days later, Progressive again asked

Community Bank to destroy three new pages, which it also claimed to have inadvertently

produced.   [*Id.*]   When Community Bank again agreed to do so, its counsel wrote to

Progressive's counsel:

> I trust that you will be similarly accommodating if we ask for the return of
> inadvertently produced privileged/protected documents in the future.  And I hope
> we will not face a debate about 'inadvertently,' diligent review, etc.  I did not
> even raise those issues when you asked for the documents to be returned or
> destroyed, despite the small number of documents in issue and the length of time
> taken to review them, etc.

[*Id.* at 1.]   Progressive's counsel wrote back, "I appreciate your courtesy in this regard and the

consideration you afforded us in that regard.  Should the occasion arise, you can expect the same

courtesy in return."  [*Id.*]

Because Community Bank didn't in fact receive that same courtesy, it has filed the

present Motion.  It asks that the Court to order several things.  First, Community Bank wants

Progressive to find that Mr. Cook's handwritten notes marked as Exhibit 13 constitute protected

work product and that his notes marked as Exhibit 14 constitute attorney-client privileged

materials.[2]   Second, it wants all references to Exhibit 13 and 14 stricken from Progressive's

pending Motion for Summary Judgment.   Finally, for its trouble, Community Bank wants

Progressive to pay Community Bank's attorney's fees for having to bring this Motion.

### DISCUSSION

Like all rights, the right to withhold work-product and the right to withhold attorney-

client communications are both subject to both waiver and forfeiture, two related but distinct

---

[2] The Motion doesn't appear to require Progressive to return any other privileged documents
beyond Exhibits 13 and 14.  As explained below, even if it did, the outcome would be the same.

doctrines, *see generally United States v. Kincaid*, 571 F.3d 648, 654 (7th Cir. 2009) ("The Supreme Court has explained, and we have echoed on numerous occasions, that waiver is different from forfeiture.  Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right."  (quotation, citations, and alteration omitted)); *Dellwood Farms v. Cargill, Inc.*, 128 F.3d 1122, 1127-28 (7th Cir. 1997) (discussing the difference between "waiver" and "forfeiture" in the privilege context).  Because attorney-client privilege exists for the benefit of the client—that is, to ensure that the client receives sound legal advice—only the client's actions or inactions are relevant to ascertaining waiver and forfeiture.  *See In re Special September 1978 Grand Jury (II)*, 640 F.2d 49, 62 (7th Cir. 1978); *Mayberry v. State*, 670 N.E.2d 1262, 1268 (Ind. 1996) ("[B]ecause the privilege belongs to the client and can only be waived by conduct attributable to the client."  (citation omitted)).  Work-product immunity, "on the other hand, functions not merely and (perhaps) not mainly to assist the client in obtaining complete legal advice but in addition to establish a protected area in which the lawyer can prepare his case free from adversarial scrutiny."  *In re Special September Grand Jury (II)*, 640 F.2d at 62.  Consequently, both the client and the attorney must consent to its disclosure.  *See id.* at 63.

Here, the Court need only decide whether Community Bank can recover the two documents at issue.  Mr. Cook hasn't intervened in this action to request the return of Exhibit 13 and, consequently, forfeited any right to claim that it was exempt from discovery as work product.  As for Exhibit 14, which is only alleged to be protected by the attorney-client privilege, Mr. Cook never had an independent basis to assert the privilege if his client, Community Bank, consented (or forfeited its right to object to) the disclosure.

- 5 -

Although Progressive argues that the two Exhibits are privileged or work product and although it argues that Community Bank voluntarily waived any such non-discoverability in several different ways, the Court need not consider those arguments.  Community Bank says that it inadvertently produced the Exhibits.  But even assuming that it did, Federal Rule of Evidence 502, which controls the consequences of inadvertent production, doesn't permit Community Bank to recover the Exhibits.

Federal Rule of Evidence 502(e) first directs the Court to give effect to any agreement that the parties have previously reached about inadvertent production.  Fed. R. Evid. 502(e)("An agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection is binding on the parties to the agreement….").[3]  Here, the "agreement" relied upon by Community Bank is limited to Progressive's assurances that Community Bank would receive the same "courtesy" that Community Bank had previously shown.  The Court finds, however, such language is too amorphous to be binding.  *See generally, e.g.*, *Conwell v. Gray Loon Outdoor Mktg. Group*, 906 N.E.2d 805, 813 (Ind. 2009) ("To be valid and enforceable, a contract must be reasonably definite and certain….Thus, where any essential element is omitted from a contract, or is left obscure or undefined, so as to leave the intention of the parties uncertain as to any substantial term of the contract, the contract may not be specifically enforced."  (citations omitted)). Numerous essential terms of the agreement are omitted, particularly, as is crucial here, the extent of its applicability to nonparty productions.  Indeed, counsel's use of the term "courtesy" at the time, as opposed to "agreement," demonstrates that the nature of any expected reciprocal conduct was professional/moral in nature, not in the nature of a legal right.  Moreover,

---

[3] No previous Court order addresses inadvertent production.  *See id.* Rule 502(d)(directing courts to enforce agreements regarding waiver that have been incorporated into orders).

Progressive's "courtesy" was limited to inadvertent disclosures.  Progressive asserts that the documents were deliberately provided, which is not an unreasonable assertion given that an express request for a privilege log was ignored.

Where, as here, the parties have not previously agreed on how to handle claims of inadvertent production, Federal Rule of Evidence 502(b) directs the Court to determine whether the party seeking to recover the materials has satisfied all of the Rule's requirements.  Among them, the party must have taken "reasonable precautions to prevent disclosure" in the first instance.  Fed. R. Evid. 502(b).

Community Bank took no precautions.  Despite receiving advance notice of the subpoena to Cook & Cook, *see* Fed. R. Civ. Pro. 45(b)(1), Community Bank—as it concedes—"did not assist with the production of Mr. Cook's files,"  [Dkt. 63 at 9].  While it claims that it reasonably relied upon Cook & Cook's privilege objections, that claim must fail for two reasons. Community Bank should have known that Cook & Cook's generalized privilege objections, unsubstantiated by any privilege log, could never hold up.  *See* Fed. R. Civ. Pro. 45(b)(2)(A) (requiring a subpoena recipient to both "expressly" make a claim of privilege or work-product immunity and to support that claim with a "descri[ption of] the nature of the withheld documents…without revealing information itself privileged or protected [that] will enable the parties to assess the claim"); *Hobley v. Burge*, 433 F.3d 946, 947 (7th Cir. 2006) ("An attorney asserting privilege must timely support that claim with a 'privilege log' which describes the nature of each document being withheld.").[4]  And, because Community Bank ultimately owns the attorney-client privilege, Community Bank—not Mr. Cook—should have examined the

---

[4] *See also Novelty, Inc. v. Mountain View Marketing, Inc.*, 1:07-cv-01229, dkt. 310, at 5-6 (S.D. Ind. Jan. 29, 2010) (collecting Seventh Circuit authority prohibiting blanket assertions of privilege and denying motion to reconsider a deemed waiver of privilege that resulted from the failure to submit a proper privilege log).

documents to decide which privileges, if any, it wished to assert.  Permitting Community Bank to blindly rely upon Cook & Cook to assert all possible privileges (even those that Cook & Cook didn't own) would impermissibly conflict with the strong policy preference in the Federal Rules of Civil Procedure for full disclosure of relevant information "to the fullest practicable extent," *United States v. Procter*, 356 U.S. 682 (1958) (citation omitted).  Thus, the Court cannot and will not find that Federal Rule of Evidence 502 permits Community Bank to recover Exhibits 13 and 14.

There is, however, another issue that entitles Community Bank to at least some relief under its Motion.  As Community Bank pointed out in its opening brief, [dkt. 63 at 7], Progressive violated Federal Rule of Civil Procedure 26(b)(5) when it used Exhibits 13 and 14 in its summary judgment papers before this privilege dispute had been resolved.  Fed. R. Civ. Pro. 26(b)(5)(B)("After being notified [of a claimed inadvertent disclosure], a party must promptly return, sequester, or destroy the specified information and any copies it has; [and] must not use or disclose the information until the claim is resolved….").  Progressive offers no defense for its misconduct, and the Court sees none.[5]  Because Progressive impermissibly resorted to self-help to try and avoid the risk that Progressive couldn't use the disputed materials as evidence in this matter, the Court will impose an appropriate and proportional sanction.

### CONCLUSION

Community Bank's Motion is **GRANTED IN PART** and **DENIED IN PART**.  The Motion is granted to the following extent only, but denied in all other respects:

---

[5] It likewise offers only deafening silence regarding its refusal to provide Community Bank the same professional courtesy that Community Bank had provided it.

1. Progressive is hereby prohibited from relying upon Exhibits 13 and 14 from Mr. Cook's deposition, and any deposition testimony about them, as substantive evidence in this case.[6]

2. Progressive's Motion for Summary Judgment, and all its related materials, filed at docket entry 60, are **STRICKEN** from the record.   Progressive shall have **five days** to file a revised motion for summary judgment that doesn't rely upon the evidence excluded under the preceding paragraph.  Upon filing of the revised brief, the normal briefing schedule under Local Rule 56.1 shall control.

3. Progressive shall pay one-half of Community Bank's fees and costs incurred in filing the Motion.  Unless the parties have already resolved the amount to be paid by then, Community Bank shall submit its fee petition within **seven days**.  Progressive shall have **seven days** thereafter to respond.  No reply is necessary.

04/08/2010

Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF only:**

Keith G. Flanagan
CLAUSEN MILLER, P.C.
kflanagan@clausen.com

Laura Sue Reed
RILEY BENNETT & EGLOFF LLP
lreed@rbelaw.com

---

[6] The Court will still permit Progressive to use these items for impeachment purposes to promote the truth-seeking function of litigation.

James W. Riley Jr.
RILEY BENNETT & EGLOFF LLP
jriley@rbelaw.com

Mary F. Schmid
STEWART & IRWIN
mschmid@stewart-irwin.com

Scott L. Schmookler
CLAUSEN MILLER, P.C.
sschmookler@clausen.com