**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **COMMUNITY BANK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Cause No. 1:08-cv-1443-WTL-WGH** |
| | ) | |
| **PROGRESSIVE CASUALTY INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

Before the Court is the Defendant's Amended Motion for Summary Judgment (Docket No. 68). This motion is fully briefed, and the Court being duly advised, now **GRANTS** the motion for the reasons set forth below.

**I.  LEGAL STANDARD**

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).  Finally, the non-moving party bears

the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II.  BACKGROUND

In 1998, Community Bank ("Community") loaned money to Thomas Foxworthy and Associates ("TFA") for the purchase and redevelopment of a piece of commercial real estate. TFA ultimately defaulted on the loan, which resulted in litigation.[1]  On July 13, 1999, Community informed its insurer, Progressive Casualty Insurance Company ("Progressive"), of the MCS suit.[2]  Several weeks later, on August 27, 1999, Community applied for additional coverage.  In its application, Community identified the MCS suit as a "fact, circumstance or situation involving the bank or the directors or officers of the bank which one reasonably should expect could give rise to any future claim."  Docket No. 69 at 6.  Community indicated that it understood that "any claim arising from a prior, threatened or pending suit" was "excluded from coverage."  *Id*.

Progressive issued a successor insurance policy (the "Successor Policy"), which included an entity endorsement that covered certain claims against Community.  The Successor Policy

---

[1] Although numerous lawsuits arose from TFA's default, for purposes of this Entry they can be simplified into three suits: (1) TFA's suit against Community (the "TFA suit"); (2) the guarantors' suit against Community (the "Guarantor suit"); and (3) the subcontractor's suit against Community (the "MCS suit").

[2] Progressive initially denied coverage for the MCS suit because, at the time the MCS suit arose, Community's insurance policy only covered claims against Community's directors and officers and the MCS suit originally named only Community.  However, when the complaint was amended and Community's Vice President, Larry Riggs, was added as a defendant, the suit came within the scope of the Progressive policy.  Accordingly, Progressive reimbursed Community's defense costs.

took effect on September 11, 1999.  However, despite requests from Community, Progressive

did not provide a copy of the Successor Policy until July 2004.[3]

In October 1999, TFA filed for bankruptcy protection.  TFA's statement of financial

affairs, filed on October 25, 1999, listed a claim against Community as personal property.  *See*

Docket No. 71 at 5.  In January 2000, Community filed suit against the guarantors of the TFA

loan.  The guarantors filed counterclaims against Community on March 14, 2000.  Then, in July

2000, TFA sued Community.

Relying on statements made by Progressive's Claim Specialist, Mike Weikle,

Community settled the TFA suit in March 2003 and the Guarantor suit in July 2006.  Progressive

denied coverage for both suits.  Community filed this action in Hamilton County Superior Court.

Progressive, citing diversity jurisdiction, properly removed the case to federal court.

### III.  DISCUSSION

Progressive claims that it is entitled to summary judgment because the Successor Policy

excludes coverage for any claim:

> Arising out of or in any way involving (1) any WRONGFUL ACT, or any fact,
> circumstance of [sic] situation which has been the subject of any notice given
> prior to the effective date of this Policy under any other insurance policy
> providing protection for the DIRECTORS, OFFICERS or the employees of the
> COMPANY or the COMPANY, including any matter in any way related thereto;
> or (2) any other WRONGFUL ACT which, together with a WRONGFUL ACT
> which has been the subject of such notice described in the preceding clause,
> would constitute INTERRELATED WRONGFUL ACTS.

Docket No. 68 Ex. 6 at 3.

Before the Court can determine whether the policy exclusions apply, the Court must

---

[3] Interestingly, given that the Successor Policy's effective period was September 11, 1999 to September 11, 2002, this would be almost two years <u>after</u> the policy ended.

address Community's "estoppel" argument.  In short, this argument asserts that Progressive

cannot rely on the Successor Policy's exclusions because Progressive never provided

Community with a copy of the policy.  *See* Docket No. 71 at 13.  Community cites case law from

North Dakota, Wisconsin, and Utah in support of its argument.  However, the Court's review of

these cases indicates that they are not analogous.  Instead, the Court finds *Neely v. American

Family Mutual Insurance Co.*, 123 F.3d 1127 (8th Cir. 1997), an Eighth Circuit case, persuasive.

In *Neely*, the insured plaintiffs argued that American Family was estopped from relying on a

specific clause in the policy because American Family failed to deliver the policy.  *Id*. at 1130.

The Eighth Circuit first noted that the plaintiffs "do not make it entirely clear whether this

argument relates to the doctrine of promissory estoppel or equitable estoppel."  *Id*.  However,

this was largely irrelevant because neither theory was successful.  Further, the court noted that

"[w]hile the failure to deliver an exclusionary clause *could* result in enforcement problems . . .

the [plaintiffs] have not shown that . . . the failure to deliver an exclusionary clause results in the

*per se* inability to enforce the clause."  *Id*. at 1130 n.4 (emphasis added).

 Similarly, in the instant case, Community has failed to specify whether it is making a

promissory estoppel or equitable estoppel argument.  Yet, this is of little import, as the Court is

convinced that neither theory would be successful.  In addition, Community has not cited a

single case to indicate that, under Indiana law, the failure to deliver an insurance policy or

exclusionary clause results in the *per se* inability to enforce the clause.  Nor has the Court's own

research revealed any case law dictating this result.  Accordingly, Community's "estoppel"

argument is unpersuasive, thus, the Court turns now to the Successor Policy's exclusion.

 "The interpretation of an insurance policy is generally a question of law appropriate for

summary judgment." *Liberty Mut. Ins. Co. v. Mich. Mut. Ins. Co.*, 891 N.E.2d 99, 101 (Ind. Ct. App. 2008) (citing *Smith v. Auto-Owners Ins. Co.*, 877 N.E.2d 1220 (Ind. Ct. App. 2007)). Courts review insurance policies "using the same rules of interpretation applied to other contracts, namely if the language is clear and unambiguous [the Court] will apply the plain and ordinary meaning." *Id*. In addition, courts "'will not give insurance policies an unreasonable construction to provide added coverage.'" *Id*. at 101-02 (*Am. Family Ins. Co. v. Globe Am. Cas. Co.*, 744 N.E.2d 932, 935 (Ind. Ct. App. 2002)). "In order to apply the rules of construction favoring the non-drafter of insurance contract terms, the language must be ambiguous or of doubtful meaning." *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985) (citation omitted), *cert. denied* 479 U.S. 1060 (1987). "Failure to define a term in an insurance policy does not necessarily make it ambiguous." *Am. Home Assurance Co. v. Allen*, 814 N.E.2d 662, 666 (Ind. Ct. App. 2004) (citing *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997)). "Rather, an insurance policy is ambiguous only if a provision is susceptible to more than one reasonable interpretation." *Id*. "Additionally, an 'ambiguity is not affirmatively established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party.'" *Id.* at 666-67 (quoting *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002)).

   The Successor Policy clearly and unambiguously excludes coverage for claims arising from any wrongful act, or any fact, circumstance, or situation that was the subject of any notice given prior to the effective date of the policy. *See* Docket No. 68 Ex. 6 at 3. And here, Community undisputedly gave Progressive notice of the MCS suit prior to the effective date of the Successor Policy. Thus, the relevant question is whether the TFA and Guarantor suits arise

5

out of the same facts, circumstance, or situation as the MCS suit.  Progressive vigorously argues that all three suits arose out of the TFA renovation project, involved Community's loan to TFA, allege that Community made misrepresentations, and seek relief based upon Community's handling of the TFA loan.  *See* Docket No. 69 at 13.

In response, Community argues that in Indiana, "arising from" or "arising out of," means "caused by" or "the efficient and predominating cause."  Thus, Community alleges that "[m]ore than an isolated connection between the claim and the event or action must be present."  Docket No. 71 at 15.  Because, according to Community, the TFA and Guarantor suits "do not 'involve' in any way the Bank's misrepresentations to MCS or the subcontractors," the TFA and Guarantor suits do not arise from the same facts, circumstance, or situation.  *Id*. at 16.

Community's argument is unsuccessful because it fails to recognize that all three suits arose out of "one loan to one borrower on one real estate project."  Docket No. 82 at 4.  Although the TFA, Guarantor, and MCS suits present different legal theories, all three suits were caused by the same course of conduct.  Further, the exclusion does not require complete commonality – that is, the parties need not assert the same legal theories – all that matters is that the three suits arose from, or were caused by, the same conduct.  Here, all three suits arose from Community's misrepresentations about the TFA loan.  Viewing the evidence in the light most favorable to Community, and having drawn all reasonable inferences in Community's favor, the Court is convinced that the exclusion applies and bars Community's suit.[4]

## CONCLUSION

---

[4] Because the "prior notice" exclusion bars Community's suit, the Court declines to address the "interrelated wrongful acts" exclusion.

For the foregoing reasons, the Defendant's Amended Motion for Summary Judgment

(Docket No. 68) is **GRANTED**.

SO ORDERED:  07/27/2010

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Keith G. Flanagan
Clausen Miller, P.C.
kflanagan@clausen.com

Laura Sue Reed
Riley Bennett & Egloff LLP
lreed@rbelaw.com

James W. Riley Jr.
Riley Bennett & Egloff LLP
jriley@rbelaw.com

Mary F. Schmid
Stewart & Irwin
mschmid@stewart-irwin.com

Scott L. Schmookler
Clausen Miller, P.C.
sschmookler@clausen.com